IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 5, 2001 Session

# TRAVELERS INDEMNITY COMPANY v. KENTON FREEMAN, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 00-497-III     Ellen Hobbs Lyle, Chancellor

### No. M2001-00657-COA-R3-CV - Filed February 28, 2002

Travelers Indemnity Company [Travelers] filed a complaint for a declaratory judgment respecting its liability to pay UM coverage for the minor child of its policyholder who was divorced from the child's mother, with joint custody having been awarded. Mother was killed in a traffic accident in Alabama; her passenger child was injured. Mother owned and was driving her automobile, and she also had UM coverage. The adverse driver had split liability coverage all of which was paid, in equal parts, to the Administrator of the mother's estate, and to the minor child. Mother's UM carrier paid its entire policy proceeds to her administrator. Travelers objected, inter alia, to the lack of allocation of the proceeds of mother's UM coverage. Travelers' insured, on behalf of his minor child, filed a counter-claim against Travelers for the entire UM coverage, notwithstanding an amount certain had never been determined. The court found that Travelers had never disputed that the value of the minor child's claim exceeded the UM coverage and rendered a summary judgment against Travelers for an amount certain. We vacate and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ. , joined.

John D. Schwalb, Nashville, Tennessee, for the appellant, Travelers Indemnity Company.

Steven A. Riley, Gregory S. Reynolds and Chris L. Vlahos, for the appellee Kenton Freeman, individually, and as next friend of Will Freeman.

### OPINION

This litigation began as a complaint for a declaratory judgment. The plaintiff [Travelers] alleged that on May 12, 1999, it issued a policy of liability insurance to Kenton Freeman in Davidson County, which provided UM coverage of $500,000.00 to him and any family member, who is described as a blood relative residing in Freeman's household.

Travelers further alleged that on August 4, 1999, in Alabama, Alice Freeman, the former wife of Kenton Freeman, was killed when another vehicle struck her automobile, and that Will Freeman, age 11, the son of Kenton and Alice Freeman, was severely injured in the accident.

Travelers further alleged that the vehicle owned and driven by Alice Freeman was insured by Progressive Insurance Company [Progressive] which provided UM coverage of $500,000.00. The vehicle which struck the Freeman automobile was insured by Nationwide Insurance Company, with limits of $100,000.00 per claimant, which was paid.

Travelers further alleged that the Estate of Alice Freeman has demanded the entire amount of UM coverage from Progressive, and that a claim has been made on behalf of Will Freeman under Kenton Freeman's policy with Travelers. It is alleged that the Progressive policy is primary to that of Travelers as to any claim of Will or Kenton Freeman, and that Travelers has no liability to them under its policy, or alternatively, that Travelers is entitled to offset any payments made by Progressive.

Travelers sought a judgment that it did not provide coverage to Will Freeman, or in the alternative, that the Progressive policy is primary to the policy of Travelers, and that Progressive be directed to make no payments to the Estate of Alice Freeman until the right of the parties has been determined.

Kenton Freeman filed a response for himself and as next friend of Will Freeman. He alleged that Will Freeman, his son, resided with him in Franklin, Tennessee, and at the time of the accident, Will resided with both of his parents. The allegations respecting liability insurance were admitted.

By way of counter-claim against Travelers, Freeman alleged that Alice Freeman was driving her automobile northbound on I-65 in Chilton County, Alabama, when she was struck head on by an automobile driven by John Watson who was traveling southbound on I-65, and crossed the median. Watson was killed instantly, and Alice Freeman died within three hours. It is alleged that Will Freeman sustained fractures of both legs, skull, ribs, and other injuries.

The counter claimants alleged that Nationwide, on behalf of Watson, paid its policy limits of $100,000.00, each, to the Estate of Alice Freeman, and to the Circuit Court Clerk of Alabama for the benefit of Will Freeman.

Counter claimants further alleged that Kenton Freeman, as Administrator of the Estate of Alice Freeman, demanded of Progressive its policy limits of $500,000.00 for the wrongful death of Alice Freeman, offset by the $100,000.00 paid by Nationwide and that the Administrator has agreed to accept the policy limits subject to the court's approval.

Counter claimants further alleged that Travelers provided Kenton Freeman with UM coverage of $500,000.00 for any family member, to which Will Freeman, or a family member, is entitled, but which Travelers has refused to pay, thereby breaching its contract with Kenton Freeman, and is guilty of bad faith under Tenn. Code Ann. §56-7-105.

-2-

In its response to the counter-claims, the Progressive Casualty Insurance Company relied upon its policy provisions, and affirmatively pleaded the defense of release, alleging that Kenton and Will Freeman entered into a compromise and settlement with the under insured motorist, and released the tort-feasor from any liability for the accident.

In its response to the counter-claim Travelers denied that Will Freeman is an insured under the policy, denied the right of Kenton Freeman to recover under the policy, and denied the right of Will Freeman to recover under the policy. Travelers further denied that Kenton Freeman "had a claim for bad faith."

Progressive moved the court that it be allowed to deposit $400,000.00 with the treasury of the court and thereupon be dismissed from the case and adjudged to be without further liability. The motion was granted and Progressive thereupon deposited $400,000.00 with the court, such action being without prejudice to the rights of Travelers, but not constituting a grant for denial of Will Freeman's entitlement to coverage under the policy Travelers issued to Kenton Freeman.

Thereupon, Kenton Freeman, as guardian of Will Freeman, moved for summary judgment "on all claims in the amended complaint and counter-claim on the grounds that there are no disputed issues of fact . . . "

Travelers then moved for summary judgment on "plaintiffs negligence claims," alleging that there are no genuine issues of material fact.

The motion of Kenton Freeman, as guardian of his son, Will, was granted and he was "awarded a judgment in the amount of $400,000.00, plus pre-judgment interest at the rate of 10 percent per annum from January 4, 2000." Travelers appeals. Appellate review is *de novo* on the record. We presume the judgment is correct, Tenn.R.App.P. Rule 13(d), but not as to questions of law.

The appellate standard of review of a grant of summary judgment is set out in  Staples v. CBL & Associates 15 S.W.3d  83, 89 (Tenn. 2000), as follows:

> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).

Travelers propounds the following issues for review:

1. Did the court below commit error in granting summary judgment to the defendants in the amount of $400,000.00 thereby, in effect, allocating all of the primary uninsured motorist coverage to cover punitive damage in violation of the uninsured motorist statute?

2. Did the court below commit error when it failed to dismiss the defendants' bad faith claim?

3. Did the court below commit error in denying Travelers and granting defendants summary judgment when the primary policy of uninsured motorist coverage had not been exhausted?

4. Even assuming the primary uninsured motorist limits were exhausted, did the court below commit error when it failed to allocate or prorate the benefits of the primary uninsured motorist coverage on the basis of the value of the claims?

5. Did the court below commit error in granting summary judgment for an amount certain when the value of the underlying claims had never [been] determined?

Will was severely injured in the traffic accident in Alabama. The insurer of the adverse driver paid him $100,000.00; his mother's UM carrier paid him nothing, because it paid the policy limits [$500,000.00 less $100,000.00] to the estate of his mother.[1]

Because the issues are intertwined, we elect to discuss them collectively. At the outset, it may be helpful to a clearer understanding if the relevant insurance policies are further identified:

> *Watson* was insured by *Nationwide*, who paid its split-policy limits equally to the Administrator of the Estate of Alice Freeman and to the Alabama Circuit Court Clerk on behalf of Will Freeman, a minor. The Nationwide policy is not implicated in this litigation.

> *Alice Freeman* was insured by *Progressive*, which paid its *entire* UM coverage[2] to the administrator of her estate. Will Freeman was paid nothing. He and the Administrator of his mother's estate were represented by the same attorney.

> *Kenton Freeman's* policy with *Travelers* was implicated owing to its UM coverage provision. Initially, Travelers alleged that Will Freeman was not a member

---

[1] Presumably, Will would inherit the funds received by the Administrator of his mother's estate, assuming that she died intestate and unmarried. He was apparently an only child.

[2] $500,000.00 less $100,000.00 paid by Nationwide in accord with policy provisions.

of Kenton Freeman's household, which would negate the UM coverage afforded by Travelers' policy, but this position has been abandoned and Travelers now concedes that its UM coverage is exposed, as will hereafter appear.

With two exceptions, the issues involved the allocation of the proceeds of the Progressive policy. The excepted issues are those concerned with (1) alleged bad faith of Travelers in not promptly paying the UM coverage to Will Freeman, and (2) the summary judgment for an amount certain.

Before we reach the issues, a parenthetical discussion of post-summary judgment proceedings is necessary. Travelers filed a Rule 59 motion to alter or amend "all orders entered within 30 days of the filing of this motion," including (1) the denial of Travelers' motion for summary judgment, (2) the granting of the defendants' [Freeman's] motion for summary judgment, (3) the granting of judgment against Travelers for $400,000.00, and (4) the award of prejudgment interest.

Counsel for Travelers argued "that for liability to exist under any UM policy there has to be some tort-feasor to a judgment or some type of agreement or settlement . . . because the policy provides that we will pay all sums an insured is entitled to recover from the owner or operator of an uninsured motor vehicle. There has been no determination as to what the damages for the death of this lady were, nor has there been a determination as to the damages for this young man."

Counsel then pointed out the differences between it [the amount of damages] not being argued and it being conceded, to which the trial judge agreed. We also agree.

Travelers next pointed out that, as to Will Freeman, two claims existed on account of his minority: one by his father for medical expenses, and Will's claim for personal injuries, and that there was "nothing in the record that would support a determination by the court that that is $400,000.00." We agree.

Counsel for Travelers next argues "that the Travelers' policy is the secondary uninsured policy as it relates to Will Freeman, but that it is a primary UM policy as it may relate to his father's claims which could still be asserted because Alabama has a two-year statute of limitation . . . If the secondary UM carrier is to be liable there has to be an exhaustion of the primary UM policy . . . That policy was not exhausted."

The argument continued that [Progressive] "paying $400,000.00 into the court did not exhaust the limits of its policy because each claim must be examined separately . . . Progressive got out of this case for $100,000.00 less than they should have."

Counsel then referenced Alabama's wrongful death statute which allows the recovery of *punitive damages only* in a wrongful death case. Compensatory damages are *not* recoverable.[3] Consequently, Travelers argues that Progressive paid $400,000.00 as compensatory damages, thus entitling Travelers to a credit for this amount. Travelers further asserts that even if this argument is rejected the $400,000.00 paid by Progressive must be pro-rated between the wrongful death claim and Will's claim for personal injuries.

We cannot consider the provocative issue of the Alabama Wrongful Death Statute because the issue was raised, for the first time, after summary judgment was granted. *See, **Bradley v. McLeod***, 984 S.W.2d 929 (Tenn. Ct. App. 1998) [a Rule 59 motion is not available to raise new legal theories, or to introduce new evidence that was always available].

Contrary to the insistence of the appellees, however, we may consider the remaining issues raised by Travelers respecting the non-allocation of the Progressive policy proceeds and the award of a sum certain to Will Freeman. Tennessee law controls the interpretation of the issuance policy. Tenn. Code Ann. § 56-7-102.

Because we cannot consider Travelers argument that the Progressive payment must be allocated to punitive damages only, as the Alabama Statute directs, we turn to the relevant Tennessee Statute, Tenn. Code Ann. §56-7-1201. In doing so, we must assume that Progressive's policy payment to the Administrator of her estate was in settlement of his claim for compensatory damages. The statutory scheme provides:

(3)  With respect to bodily injury to an insured while occupying an automobile not owned by the insured, the following priorities of recovery under uninsured motorist coverage apply:

(A)  The uninsured motorist coverage on the vehicle in which the insured was an occupant shall be the primary uninsured motorist coverage:

(B)  If uninsured motorist coverage on the vehicle in which the insured was an occupant is exhausted due to the extent of compensatory damages, then the uninsured motorist coverage provided by a policy under which the insured is a named insured shall be applicable as excess coverage to the policy described in subdivision (b)(1); provided, that if the insured is covered as a named insured under more than one (1) policy, then only such policy with the highest limits of uninsured motorist coverage shall apply;

(C)  If the uninsured motorist coverage provided under the policies described in subdivisions (b)(3)(A) and (B), if applicable, is exhausted due to the extent of compensatory damages, then the uninsured motorist coverage provided by a policy under which the insured is covered other than as a named insured shall be applicable

---

[3] *Campbell v. Williams*, 638 So.2d 804 (Ala. 1994) and a host of other cases. The issue is well settled.

as excess coverage to the policies listed in subdivisions (b)(3)(A) and (B); provided, that if the insured is covered by more than one (1) such policy, then only such policy with the highest limits of uninsured motorist coverage shall apply; and

(D)    In no instance shall the insured be entitled to receive total benefits from all policies listed in subdivision (b)(3)(A)-(C) in an amount greater than the limits of the policy providing the highest limits of uninsured motorist coverage.

The operative language is "if the UM coverage on [the Alice Freeman vehicle] is exhausted due to the extent of compensatory damages, then the UM coverage provided by a policy under which the insured is a named insured [the Kenton Freeman vehicle] shall be applicable as excess coverage . . ."

The appellees argue that the UM coverage on the Alice Freeman policy was exhausted, thereby activating the excess coverage. It is admitted that Progressive paid the Administrator the entire policy proceeds, upon his demand, and paid Will Freeman nothing. Since the same attorney represented[4] both the Administrator and Will Freeman, he chose - we know of no other way to express the fact - to apportion 100 percent of the proceeds to the Administrator's claims as a matter of representative strategy, since any apportionment might inure to the benefit of Travelers. The troubling aspect of this strategy is that the value of the claims of the Administrator and Will Freeman has never been determined. We infer that the trial court apparently assumed that the value of the claims to be in excess of the policy limits. We do not hesitate to hold that such an assumption cannot be indulged; to do so would arrogate, first to counsel, and secondly, to the trial court, the authority to determine that the pecuniary or excessive value of Alice Freeman's life was, at a minimum, the policy limits.

As we have seen, the summary judgment determined both the issue of coverage and the amount of damages to which Will Freeman was entitled under the contract of issuance. We hold that such determination was beyond the reach of the Chancellor[5] because the *amount* of damages was not an issue for determination in an *ex contractu* action in the absence of an agreement, stipulation, judgment or some other final mechanism. There was some evidence that Will Freeman had incurred medical expenses - admitted over objection - and the affidavit of his father is clearly hearsay. It is true that the affidavit was not countervailed, but the amount of damages was not a proper adjudicative issue.

---

[4] The motion of Travelers to disqualify counsel for the claimants because of the apparent conflict of interest was denied. The issue is not before us except tangentially.

[5] From the Bench, the Chancellor commented that "the record indicates those [damages] are undisputed," possibly owing to the importunations of counsel. The Chancellor relied on *Spicer v. Hilliard*, 879 S.W.2d 858 (Tenn. Ct. App. 1994) which we find is inapposite to the case at Bar.

There is no evidence in the record that Will's damages had been determined in any kind of proceeding or had been agreed upon. Neither do we find in the record any admission by Travelers that Will was entitled to receive any amount from Travelers; we note that counsel for Will repeatedly stated to the Chancellor - and in the brief - that Travelers "has never disputed that the value of Will Freeman's claim exceeded its policy limits." This argument overlooks the point that the *value* of Will's claim was never an issue; *coverage* was the issue. The determination of Will's damages, or a determination that his damages were in excess of the policy limits, was beyond the reach of the Chancery Court.

The appellee argues that "Travelers did not argue that the value of his [Will's] claim exceeded its policy limits but simply stood on it policy defense" and that it "cannot raise that issue for the first time on appeal." The novelty of this argument is notable, to say the least, and overlooks the fact that counsel for Travelers objected to a description of Will's injuries as hearsay and irrelevant. We further note that the Chancellor commented that "the record indicated those [damages] are undisputed." It is worth repeating that the *amount* of damages had never been determined; moreover, we find no evidence in the record that the *amount* of damages was undisputed. It is easy to speculate - impermissibly - that Will's injuries were so extensive as to justify the assumption that the value of his claims exceeded the UM coverage.

The issue of the alleged bad faith cannot be resolved on the record before us. The trial judge held that this issue required a merit trial; Travelers did not include the issue in its motion for summary judgment and thus we have no authority to adjudicate it.

In sum, we hold that, given the posture of the case, the policy proceeds paid by Progressive should be allocated between the Administrator of the Estate of Alice Freeman and Will Freeman after the value of each claim has been determined. The allocation should be pro-rated in accordance with the amount of damages each claimant is awarded. See, 7 Am. Jur. 2d, Automobile Insurance, Sec. 430, and 70 A.L.R. 2d 416, Sec. 3.

In light of the fact that Travelers belatedly conceded that Will Freeman was an additional insured under its policy, we hold that in the event a proper determination is made of the value of his claim, following the allocation of the Progressive policy, Travelers is liable therefor to the extent of coverage.

The issue of interest is pretermitted in light of our disposition of this case. The judgment of the Chancery Court is vacated and the case is remanded for all appropriate proceedings pursuant to this opinion. Costs of appeal and costs below are assessed to the appellees, Kenton Freeman, individually and as next friend for his minor son, Will Freeman.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE